UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
MECHELLE A. MURPHY,

                Plaintiff,

  -against-                        **MEMORANDUM AND ORDER**
                                            Case No. 17-CV-6966 (FB)
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
---------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                     *For the Defendant:*
HOWARD D. OLINSKY            RICHARD P. DONOGHUE
Olinsky Law Group                United States Attorney
300 South State Street            Eastern District of New York
Syracause, New York 13202     271 Cadman Plaza East
                                          Brooklyn, New York 11201

                                          By:    DAVID B. MYERS
                                                    Assistant United States Attorney

**BLOCK, Senior District Judge:**

       Mechelle Murphy seeks review of the Commissioner of Social Security's final decision denying her applications for Disability Insurance Benefits ("DIB"). Both parties move for judgment on the pleadings. For the reasons stated below, Murphy's motion is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

# I

Murphy was born in 1972, received her GED in 1988, and completed business school in 2000. She has work experience as a cashier, a clerk at a car dealership, and, most recently, a customer service representative at a transportation company.

Murphy stopped working in October 2011. She applied for DIB two years later, alleging that an injury to her left shoulder—along with diabetes, asthma, and mental problems—prevented her from working. After her application was denied, she sought a hearing before an administrative law judge ("ALJ"), at which she was represented by counsel.

The ALJ rendered his decision on July 27, 2016. Applying the familiar five-step sequential evaluation process,[1] he concluded that Murphy (1) had not engaged

---

[1] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

in substantial gainful activity since her alleged onset date and (2) had several severe impairments, namely, "left shoulder subscapular bursitis, acute systolic heart failure and status post coronary artery bypass, diabetes with diabetic neuropathy, asthma, hyperlipidemia, a bipolar disorder and a mood disorder." AR 14. He then found that (3) none of her impairments, alone or in combination, met the criteria for a presumptively disabling impairment in the Commissioner's Listing of Impairments.

Before turning to steps four and five, the ALJ assessed Hunter's residual functional capacity ("RFC"). He found that she "could perform sedentary work," but with significant non-exertional limitations:

> She can occasionally climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She can occasionally stoop, crouch or kneel. She can never crawl. She must have no exposure to moving machinery, unprotected heights or driving vehicles. She must avoid concentrated exposure to extreme heat or cold, wetness or humidity, irritants such as fumes, odors, dust and gases, poorly ventilated areas, exposure to chemicals. She can frequently reach with her left non-dominant arm and she can occasionally reach overhead with her left non-dominant arm. She is limited to work involving simple, routine tasks. She is limited to work in a low stress job. . . . She is limited to work with occasional judgment required on the job. She is allowed to work off task 5% of the day, in addition to regularly scheduled breaks.

AR 17.

Returning to the five-step evaluation process, the ALJ found that Murphy (4) could not perform her past relevant work, but (5) could perform unskilled work that existed in significant numbers in the national economy. In the later regard, he determined that Murphy's non-exertional limitations prevented her from performing

3

some unskilled sedentary jobs, but adopted the opinion of a vocational expert that she could still work as a "document preparer" or a "non-emergency dispatcher." AR 22.

Based on his findings, the ALJ concluded that Murphy was not disabled. The Commissioner's Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. Murphy timely sought judicial review.

## II

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

Hunter argues that the ALJ erred (A) by failing to address medical evidence submitted by Dr. Claude Simon, and (B) by failing to incorporate certain limitations identified by Dr. David Peterson into his RFC assessment. The Court addresses those arguments in turn.

## A. Dr. Simon

In January 2016—that is, while her application was pending—Murphy went to the emergency room complaining of nausea and chest pain. After doctors concluded she was experiencing heart failure, she underwent bypass and valve repair surgery. A discharge summary prepared by Dr. Simon listed the following "instructions":

- Shower everyday using only soap and water. Allow water to fall directly on your chest and pat the area dry. No creams or powders on the sternal wound.

- No dressings are needed.

- Eat a Heart Healthy Diet. If you are a diabetic incorporate your diabetic diet.

- Take frequent rest periods to avoid exhaustion.

* * *

- Walk outside, weather permitting, at least two times a day. Increase your activity every one to three days so that in one month you are ambulating a mile a day.

- No heavy lifting, nothing greater than 10 pounds.

- Elevate your feet when you are sitting down.

- Weigh[] yourself daily. If you start to gain 2 pounds three days in a row, call your cardiologist.

AR 487-88. The ALJ did not mention Dr. Simon's summary in his decision.

"[A]n ALJ is not required to discuss every piece of evidence submitted." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Murphy argues, however, that Dr. Simon's instructions constitute a medical opinion. Under the Commissioner's regulations, ALJs "will evaluate every medical opinion [they] receive." 20 C.F.R. § 404.1527(c). While opinions concerning a patient's RFC are not entitled to any particular weight or special significance, *see id.* § 404.1527(d)(3), they "must never be ignored," SSR 96-5P, 1996 WL 374183, at *3. Rather, ALJs must weigh such opinions according to the relevant regulations. *See id.* at *5. Further, they must "provid[e] appropriate explanations for accepting or rejecting such opinions." *Id.*

The Commissioner responds that Dr. Simon's discharge summary was not an opinion regarding Murphy's physical limitations, but merely advice for anyone recovering from major heart surgery. A medical opinion, the Commissioner notes, "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In addition, the impairment underlying the limitations "must have lasted or must be expected to last for a continuous period of at least 12 months" to meet the definition of disability.

In the main, the Court agrees with the Commissioner that Dr. Simon's discharge summary does not qualify as a "medical opinion" regarding Murphy's limitations. His instructions regarding wound care, diet, exercise, and weight monitoring do not describe any limitations; they are, as the Commissioner describes them, clearly intended as either instructions for the short-term consequences of surgery or a long-term plan for preventing a recurrence of the heart failure that necessitated it.

The remaining parts of the summary, however, are not so clear. The instruction to "[t]ake frequent rest periods to avoid exhaustion," AR 487, is undoubtedly good advice for recovery, but the advice obviously stems from the limitations facing a person who has had bypass surgery. So, too, the instruction to "[e]levate your feet when you are sitting down." AR 488. And unlike the instruction for wound care, for example, there is no time limit inherent in those instructions. It may well be the case that Murphy will need to take frequent rest periods and elevate her feet for the rest of her life.[2]

In sum, the Court concludes that those portions of Dr. Simon's discharge summary are ambiguous. While Murphy bore the burden of proving her RFC, the ALJ was under a concomitant duty to develop the record. *See Rosa v. Callahan*, 168

---

[2] The same is true of the instruction to avoid heavy lifting, but the ALJ found that Murphy's other impairments prevented that activity.

F.3d 72, 79 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). That duty includes seeking additional information when medical evidence in the existing record "conflicts with other evidence, contains an internal conflict, *is ambiguous*, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1520b(b) (emphasis added).

The current version of the Commissioner's regulations leaves it to the ALJ's discretion to determine the best way to resolve an ambiguity. *See id.* § 404.1520b(b)(2). One option is to "see if we can determine whether you are disabled based on the evidence we have." That option is not available here, however, because Dr. Simon's discharge summary is the *only* evidence regarding the effect of Murphy's heart surgery on her ability to work. The ALJ specifically found that Murphy's "acute systolic heart failure and status post coronary artery bypass" were severe impairments, AR 14, meaning that they—alone or in combination with other impairments—"significantly limit[ Murphy's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). He should have then solicited opinions as to what those limitations were, if not from Dr. Simon then from some other acceptable medical source.

Therefore, the Court must remand. On remand, the ALJ will presumably seek clarification from Dr. Simon. *See* How We Collect and Consider Evidence of

8

Disability, 77 Fed. Reg. 10651, 10652 (Feb. 23, 2013) ("[W]e expect that adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity, because the treating source may be the best source regarding these issues."). He may also seek additional opinion evidence from any acceptable source. Based on the supplemented record, he should then determine what additional limitations, if any, Murphy's heart surgery impose on her ability to do other work that exists in significant numbers in the national economy.

**B. Dr. Peterson**

Dr. Peterson, Murphy's treating orthopedist, opined that the injury to her left shoulder limited her ability to perform gross and fine manipulations. The ALJ generally gave Dr. Peterson's opinions great weight, but failed to mention those limitations in his RFC assessment.

The Commissioner concedes that this was error, but argues that the error was harmless. Since the Court is already remanding, it need not address the harmless-error argument. Instead, it can simply instruct the ALJ to correct the error on remand.

### III

For the foregoing reasons, Murphy's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the matter is remanded. Because

the ALJ reached step five of the sequential evaluation process, and because Murphy first applied for benefits in October 2013, the Court will impose time limits on the proceedings on remand. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004). The ALJ must develop the record and render a decision within 120 days of this memorandum and order. If the ALJ denies benefits, the Commissioner must render a final decision within 60 days of the ALJ's decision. If either time limit is exceeded, the Commissioner shall immediately calculate benefits.

  **SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 24, 2019